IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| MICHAEL SPRUILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 320-067 |
| | ) | |
| JACOB BEASLEY, Deputy Warden; OTIS STANTON; LT ASHLEY; and SRG. RYALS, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, is proceeding *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.     BACKGROUND**

Plaintiff names as Defendants: (1) Jacob Beasley, Deputy Warden; (2) Otis Stanton; (3) LT Ashley; and (4) Srg. Ryals. (Doc. no. 1, pp. 1, 3.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On July 8, 2020, Deputy Warden Beasley placed Plaintiff in administrative segregation Tier I because of a June 28, 2020 stabbing, despite no involvement by Plaintiff in the stabbing.

(Id. at 5.)  On July 12, 2020, Deputy Warden Beasley confided to Plaintiff he knew Plaintiff was not involved in the incident but could not prove it.  (Id.)  On July 28, 2020, Srg. Ryals delivered Plaintiff an assignment memo and appeal form stating his placement in segregation resulted from a finding he participated in a disruptive event.  (Id. at 6.)  Plaintiff timely appealed the decision; however, Warden White denied the appeal.  (Id.)  On August 17, 2020, Plaintiff visited Augusta Medical for sharp pains in his knees and back.  (Id. at 7.)  When Plaintiff returned to TSP, he was placed on Tier II segregation, and some of his property was missing.  (Id. at 6.)  A disciplinary court punished Plaintiff by rescinding his store, package, and phone rights for ninety days.  (Id.)

On August 18, 2020, Plaintiff filed a grievance stating prison officials falsely accused him of participating in the stabbing.  (Id.)  Prison officials denied Plaintiff's prior attempts to file grievances.  (Id.)  That same day, Counselor Miller informed Plaintiff his grievances were denied.  (Id.)  On August 19, 2020, Plaintiff filed an appeal, which Defendant Stanton denied.  (Id.)  Plaintiff states the segregation status "could stop [him] from paroling out."  (Id.)

On September 3, 2020, Plaintiff filed a grievance regarding his conditions of confinement since July 8, 2020, alleging pain and suffering due to long hours in his cell from segregation, consistent flooding of his cell, and improper sanitization.  (Id. at 7, 8.)  Counselor Miller denied the grievance, and Plaintiff's appeal of that denial was still pending when he filed the Complaint.  (Id. at 3, 8.)

On September 9, 2020, Officer Pope moved Plaintiff to another one-man cell.  (Id. at 9.)  Plaintiff's new cell also suffers from consistent flooding.  (Id.)  Over the next week, Plaintiff informed several officers about the conditions, however no substantial efforts have been made to fix the issue.  (Id.)  On September 16, 2020, Plaintiff slipped on water in his cell

and injured himself.  (Id. at 10.)  Lt. Ashely checked on Plaintiff and asked him to get up so she could handcuff him and enter his cell.  (Id.)  Plaintiff could not get up, and Lt. Ashley refused to enter to provide help.  (Id.)

For relief, Plaintiff requests a transfer and monetary damages.  (Id. at 11.)

## II.     DISCUSSION

### A.     Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### B. Plaintiff's Complaint Fails to State an Eighth Amendment Claim Because He Did Not Exhaust Administrative Remedies

#### 1. The Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (*per curiam*); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011) (*per curiam*); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008) (*per curiam*). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or

inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).  Rather, "[t]his provision entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'"  Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)).

Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims.  Johnson, 418 F.3d at 1159.

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."  Porter, 534 U.S. at 524.

## 2. Administrative Grievance Procedure at TSP

Because the events about which Plaintiff complains occurred in June 2020 through September 2020, the administrative grievance procedure is governed by the version of the Georgia Department of Corrections ("DOC") Standard Operating Procedure that resulted in the promulgation of Policy Number ("PN") 227.02, which became effective May 10, 2019.[1] The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C). The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor. Id. § IV(C)(1)(c) & (d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the

---

[1]DOC policies cited herein are publicly available on the DOC web site. See www.dcor.state.ga.us; *follow* link for Policies & Procedures and then Facilities Division; *click on* link for desired PN.

date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal. Id. § (C)(2)(e). If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance. Id. § (C)(2)(g). The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal. Id.

### 3. Plaintiff's Failure to Exhaust

Plaintiff filed grievances regarding his conditions of confinement on September 3, 2020, alleging that since July 8, 2020, he endured long hours in his cell from segregation, consistent flooding of his cell, and improper sanitization. (Doc. no. 1, pp. 7-8.) Counselor Miller denied the grievance, and Plaintiff's appeal of that denial was still pending when he filed the Complaint. (Id. at 3, 8.) The Complaint also alleges continuous flooding, which caused Plaintiff to slip in his cell and suffer injury on September 16, 2020. (Id. at 10.) Plaintiff does not claim to have filed a grievance for any issues since September 3, 2020.

"The time the statute sets for determining whether exhausting of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied." Goebert v. Lee County, 510 F.3d 1313, 1324 (11th Cir. 2007). Plaintiff "brought" this legal action when he signed his original complaint on September 17, 2020. Harris, 216 F.3d 970, 974 (11th Cir. 2000). Under the prison mailbox rule, Plaintiff's complaint is deemed filed when delivered to prison officials for mailing, and the signature date

7

is assumed to be the day of delivery to prison officials.  Houston v. Lack, 487 U.S. 266, 275-76 (1988).

The face of Plaintiff's pleading makes clear he did not complete the two-step grievance process because an appeal is ongoing for the September 3, 2020 grievance, and Plaintiff has yet to file a grievance for any events occurring between September 3rd and the time he filed this complaint.  That is, Plaintiff improperly bypassed the grievance and appeals process when he decided not to wait for a decision on his September 3, 2020 appeal and to file this suit rather than filing a grievance concerning his complaints after September 3rd.

Allowing Plaintiff to decide for himself to bypass the grievance and appeals process defeats the rationale behind requiring "proper exhaustion":

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .  For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time.  If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (*per curiam*) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison.").

Similarly here, allowing Plaintiff to proceed despite his decision to shortcut the grievance process would defeat the aims of the PLRA to review the merits of a prisoner's claim, and would not promote "the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy." Johnson, 418 F.3d at 1159.  The PLRA requires proper exhaustion of available administrative remedies prior to filing a federal lawsuit, which includes a requirement for compliance with procedural rules governing prisoner grievances.  Id.  Additionally, because proper exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit.  Higginbottom, 223 F.3d at 1261. It is plain from the face of Plaintiff's complaint, and indeed he concedes, he failed to complete the entire grievance process prior to commencing this case.  Doc. no. 1, pp. 3-4.

In sum, Plaintiff did not properly exhaust his available administrative remedies as to his Eighth Amendment conditions of confinement, and cruel and unusual punishment claims. Therefore, the complaint fails to state an Eighth Amendment claim upon which relief can be granted.  See Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.").

### III.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's Eighth Amendment claims for conditions of confinement, and cruel and unusual punishment be **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted

9

and Defendant LT Ashley be **DISMISSED** from this case.  In a companion Order, the Court allows to proceed Plaintiff's procedural due process claim.

SO REPORTED AND RECOMMENDED this 16th day of December, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA