IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| MICHAEL SPRUILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 320-067 |
| | ) |
| JACOB BEASLEY, Deputy Warden; OTIS STANTON; and SRG. RYALS, | ) |
| | ) |
| Defendants. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Before the Court is Defendants' pre-answer motion to dismiss, (doc. no. 13), which the Court **REPORTS** and **RECOMMENDS** be **DENIED**.

**I.   PROCEDURAL BACKGROUND**

Plaintiff initially named four Defendants in his complaint, and because he is proceeding IFP, the Court screened the complaint, directed service of process on Deputy Warden Jacob Beasley, Otis Stanton, and Srg. Ryals, and dismissed LT. Ashley. (See doc. nos. 1, 8, 10.) The Court allowed Plaintiff to proceed on his due process violation claim against Deputy Warden Beasley, Stanton, and Srg. Ryals based on allegations of improper procedure leading to Plaintiff's confinement in the administrative segregation program. (Doc. no. 8.) On March 1, 2021, Defendants filed a motion to dismiss, arguing Plaintiff

failed to exhaust his administrative remedies prior to filing his complaint. (See doc. no. 13.) Plaintiff filed a response detailing the procedures he took prior to filing the complaint, including copies of his grievances and administrative segregation appeals. (See doc. no. 17.)

### A.     Complaint Allegations

Plaintiff alleges the following facts in his complaint signed on September 17, 2020. On July 8, 2020, Deputy Warden Beasley placed Plaintiff in administrative segregation Tier I in response to a June 28, 2020 stabbing, despite no involvement by Plaintiff in the stabbing. (Doc. no. 1, p. 5.) On July 12, 2020, Deputy Warden Beasley confided to Plaintiff he knew Plaintiff was not involved in the incident but could not prove it. (Id.) On July 28, 2020, Srg. Ryals delivered Plaintiff an assignment memo and appeal form stating his placement in segregation resulted from a finding he participated in a disruptive event. (Id. at 6.) Plaintiff timely appealed the decision; however, Warden White denied the appeal. (Id.) On August 17, 2020, Plaintiff visited Augusta Medical for sharp pains in his knees and back. (Id. at 7.) When Plaintiff returned to TSP, he was placed on Tier II segregation, and some of his property was missing. (Id. at 6.) A disciplinary court punished Plaintiff by rescinding his store, package, and phone rights for ninety days. (Id.)

On August 18, 2020, Plaintiff filed a grievance stating prison officials falsely accused him of participating in the stabbing. (Id.) Prison officials denied Plaintiff's prior attempts to file grievances. (Id.) That same day, Counselor Miller informed Plaintiff his grievances were denied. (Id.) On August 19, 2020, Plaintiff filed an appeal, which Defendant Stanton denied. (Id.) Plaintiff states the segregation status "could stop [him] from paroling out." (Id.)

On September 3, 2020, Plaintiff filed a grievance regarding his conditions of confinement since July 8, 2020, alleging pain and suffering due to long hours in his cell from segregation, consistent flooding of his cell, and improper sanitization. (Id. at 7, 8.) Counselor Miller denied the grievance, and Plaintiff's appeal of that denial was still pending when he filed the Complaint. (Id. at 3, 8.) For relief, Plaintiff requests injunctive relief in the form of a transfer. (Id. at 11.)

In their motion to dismiss, Defendants produced the declaration of Cynthia Stewart, Chief Counsel at TSP. (See Stewart Decl., doc. no. 13-1.) Her responsibilities include ensuring compliance with the Georgia Department of Corrections ("GDC") Grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances. (Id. ¶ 4.) Ms. Stewart identified four grievances Plaintiff filed at TSP in 2020. (Id. ¶ 13.) Specifically, on June 28, 2020, Plaintiff filed grievance 312761, alleging harassment, that was rejected as untimely. (Stewart Decl. ¶ 16; Doc. no. 13-1, p. 26.) On August 18, 2020, Plaintiff filed grievance 312737, relating to his conditions of confinement, which was subsequently denied. (Stewart Decl. ¶ 17; Doc. no. 13-1, p. 26.) On September 4, 2020, Plaintiff filed grievance 314009, relating to his conditions of confinement, that was rejected for improper form. (Stewart Decl. ¶ 18; Doc. no. 13-1, p. 26.) And, on September 20, 2020, Plaintiff filed grievance 315752, relating to his conditions of confinement, which was also denied. (Stewart Decl. ¶ 19; Doc. no. 13-1, p. 26.) There is no record of any grievance appeals.

## II. DISCUSSION

### 1. The Legal Framework for Determining Exhaustion

Where, as here, a defendant has filed a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendants' motion will be granted. See Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant, 530 F.3d at 1373-74). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process

4

*before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case."  McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).  Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)).  Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement.  Johnson, 418 F.3d at 1159.

5

### 2. Defendants Fail to Contest Plaintiff's Exhaustion of Administrative Segregation Procedures

Upon admission to GDC, prisoners receive an oral summary of the grievance procedures and an outline in their Orientation Handbook, and prisoners may review the complete grievance procedures, as set forth in the GDC SOP, in the law library of each GDC facility. (Stewart Decl., ¶¶ 5-6.) Inmates may grieve "any condition, policy, procedure, or action or lack thereof that affects the offender personally," other than those specifically excluded by policy. (Doc. no. 13-1, p. 10, § IV(B)(1).) One such exclusion includes involuntary assignments to administrative segregation, which is covered by SOP 209.06-209.09, Administrative Segregation, opposed to SOP 227.02, Statewide Grievance Procedure.[1] (Id., p. 11 § IV(B)(2)(d).)

Under the Administrative Segregation Procedures, upon an initial placement in administrative segregation, the Deputy Warden, Assistant Superintendent, Unit Manager, or Duty Officer shall determine within twenty-four hours whether the offender shall remain in segregation. (SOP 209.06 § IV(E)(2).) The Classification Committee must hold a hearing, within ninety-six hours of the Deputy Warden, Assistant Superintendent, Unit Manager, or Duty Officer's decision, to determine if the offender should remain in administrative segregation. (Id. § IV(F).) Offenders have three business days to file an appeal with the Warden or Superintendent challenging the Classification Committee's decision, and the Warden or Superintendent's decision is final. (Id. § IV(F)(4).)

Offenders in administrative segregation may be assigned to Tier II segregation, upon recommendation by the Classification Committee and subsequent approval by the Warden.

---

[1] A list of all GDC SOPs can be found at http://www.dcor.state.ga.us/content/facilities-division-0

(SOP 209.08 § IV(C)(1)-(4).)  Within three business days, offenders may appeal the Warden's decision placing them in the Tier II program to the Director of Field Operations, and the Director's decision is final.  (Id. § IV(C)(6).)  There are no additional levels of review, nor are there any procedures for when an appeal is filed but no response is given. (See id.)

Because Plaintiff alleges he appealed both his initial assignment by the Classification Committee and his Tier II assignment and he was not required to take any additional steps under SOP 209.06 or 209.08 after submitting the initial appeals, Plaintiff's allegations, taken as true, demonstrate proper exhaustion under the first step of the Turner test.  As Defendants' motion to dismiss only relates to Plaintiff's grievance history, Plaintiff's allegations and records concerning his administrative segregation procedures remain undisputed, leaving no factual dispute for the Court to resolve under the second step of the Turner test.  Therefore, Defendants' motion to dismiss for failure to exhaust administrative remedies should be denied.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **DENIED**, (doc. no. 13).

SO REPORTED and RECOMMENEDED this 29th day of March, 2021, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA