IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| MICHAEL SPRUILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 320-067 |
| | ) | |
| JACOB BEASLEY, Deputy Warden; OTIS | ) | |
| STANTON; and SRG. RYALS, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Before the Court is Defendants' second pre-answer motion to dismiss, (doc. no. 20), which the Court **REPORTS** and **RECOMMENDS** be **GRANTED IN PART** and **DENIED IN PART**.

## I.    PROCEDURAL BACKGROUND

Plaintiff initially named four Defendants in his complaint, and because he is proceeding IFP, the Court screened the complaint, directed service of process on Deputy Warden Jacob Beasley, Otis Stanton, and Srg. Ryals, and dismissed LT. Ashley. (See doc. nos. 1, 8, 10.) The Court allowed Plaintiff to proceed on his due process violation claim against Deputy Warden Beasley, Stanton, and Srg. Ryals based on allegations of improper procedure leading to Plaintiff's confinement in the administrative segregation program. (Doc. no. 8.) On March 1, 2021, Defendants filed a first motion to dismiss, arguing Plaintiff

failed to exhaust his administrative remedies by not filing grievances prior to filing his complaint. (See doc. no. 13.) The Court denied Defendants' first motion to dismiss as Plaintiff was not required to file grievances to exhaust the applicable administrative remedies. On May 18, 2021, Defendants filed a second motion to dismiss, again arguing Plaintiff failed to exhaust his administrative remedies. (See doc. no. 20.) Defendants now argue Plaintiff failed to properly appeal his placement in the administrative segregation program. (Id.)

### 1.    Complaint Allegations

Plaintiff alleges the following facts in his complaint signed on September 17, 2020. On July 8, 2020, Deputy Warden Beasley placed Plaintiff in administrative segregation Tier I in response to a June 28, 2020 stabbing, despite no involvement by Plaintiff in the stabbing. (Doc. no. 1, p. 5.) On July 12, 2020, Deputy Warden Beasley confided to Plaintiff he knew Plaintiff was not involved in the incident but could not prove it. (Id.) On July 28, 2020, Srg. Ryals delivered Plaintiff an assignment memo and appeal form stating his placement in segregation resulted from a finding he participated in a disruptive event. (Id. at 6.) Plaintiff timely appealed the decision; however, Warden White denied the appeal. (Id.) On August 17, 2020, Plaintiff visited Augusta Medical for sharp pains in his knees and back. (Id. at 7.) When Plaintiff returned to TSP, he was placed on Tier II segregation, and some of his property was missing. (Id. at 6.) A disciplinary court punished Plaintiff by rescinding his store, package, and phone rights for ninety days. (Id.)

On August 18, 2020, Plaintiff filed a grievance stating prison officials falsely accused him of participating in the stabbing. (Id.) Prison officials denied Plaintiff's prior attempts to file grievances. (Id.) That same day, Counselor Miller informed Plaintiff his grievances

2

were denied.  (Id.)  On August 19, 2020, Plaintiff filed an appeal, which Defendant Stanton

denied.  (Id.; doc. no. 17, p. 8.)  Plaintiff states the segregation status "could stop [him] from

paroling out."  (Doc. no. 1, p. 6.)

On September 3, 2020, Plaintiff filed a grievance regarding his conditions of

confinement since July 8, 2020, alleging pain and suffering due to long hours in his cell from

segregation, consistent flooding of his cell, and improper sanitization.  (Id. at 7, 8.)

Counselor Miller denied the grievance, and Plaintiff's appeal of that denial was still pending

when he filed the Complaint.  (Id. at 3, 8.)  For relief, Plaintiff requests injunctive relief in the

form of a transfer.  (Id. at 11.)

## 2.    Defendants' Motion to Dismiss

In their second motion to dismiss, Defendants produced the declaration of Defendant

Jacob Beasley, Deputy Warden at TSP.  (See Beasley Decl., doc. no. 20-2.)  As Deputy

Warden, Defendant Beasley is familiar with the process for compliance with the Georgia

Department of Corrections ("GDC") Grievance Standard Operating Procedure ("SOP"), and

the records and information maintained in the ordinary course of business for such

compliance.  (Id. ¶ 3.)  Defendant Beasley identified two documents related to Plaintiff's

assignment to Tier I segregation filed at TSP in 2020.  (Id. ¶ 10.)  Specifically, on July 10,

2020, Warden White signed an approval of a document recapping the Tier I Program

Hearing and recommendation of the hearing committee for Plaintiff to remain in Tier I

segregation.  (Beasley Decl. ¶ 10; Doc. no. 20-2, p. 19.)  On July 15, 2020, Warden White

signed a completed Tier I Program Assignment Memo for Plaintiff's placement in Tier I

segregation.  (Beasley Decl. ¶ 10; Doc. no. 20-2, p. 20.)  There is no record of any appeals.

## II.    DISCUSSION

### 1.    The Legal Framework for Determining Exhaustion

Where, as here, a defendant has filed a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.    First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendants' motion will be granted.  See Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant, 530 F.3d at 1373-74).  If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies.  Id.  Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies.  Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process

4

*before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*);

see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  "The filing of a civil

suit without properly exhausting all available administrative remedies is a procedural misstep

that is fatal to the underlying case."  McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir.

2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking

redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520

(2002).  Moreover, the Court does not have discretion to waive the requirement, even if it

can be shown that the grievance process is futile or inadequate.  See Smith v. Terry, 491 F.

App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-

26 (11th Cir. 1998)).  Under the PLRA, the Court has no discretion to inquire into whether

administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also

Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement,

administrative remedies are deemed "available" whenever "'there is the possibility of at least

some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548

U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps"

in the administrative process; he must also comply with any administrative "deadlines and

other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a

prisoner fails to complete the administrative process or falls short of compliance with

procedural rules governing prisoner grievances, he does not satisfy the exhaustion

requirement.  Johnson, 418 F.3d at 1159.

**2.      Plaintiff Failed to Exhaust His Initial Administrative Segregation Placement While Defendants Fail to Contest Plaintiff's Exhaustion of Administrative Segregation Procedures for Tier II Segregation**

The procedure for involuntary assignments to administrative segregation is covered by SOP 209.06-209.09, Administrative Segregation.[1]  Under the Administrative Segregation Procedures, upon an initial placement in administrative segregation, the Deputy Warden, Assistant Superintendent, Unit Manager, or Duty Officer shall determine within twenty-four hours whether the offender shall remain in segregation.  (Doc. no. 20-2, SOP 209.06 § IV(E)(2).)  The Classification Committee must hold a hearing, within ninety-six hours of the Deputy Warden, Assistant Superintendent, Unit Manager, or Duty Officer's decision, to determine if the offender should remain in administrative segregation.  (Id. § IV(F).)  Offenders have three business days to file an appeal with the Warden or Superintendent challenging the Classification Committee's decision, and the Warden or Superintendent's decision is final.  (Id. § IV(F)(4).)

Offenders in administrative segregation may be assigned to Tier II segregation, upon recommendation by the Classification Committee and subsequent approval by the Warden. (SOP 209.08 § IV(C)(1)-(4).)  Within three business days, offenders may appeal the Warden's decision placing them in the Tier II program to the Director of Field Operations, and the Director's decision is final.  (Id. § IV(C)(6).)  There are no additional levels of review, nor are there any procedures for when an appeal is filed but no response is given. (See id.)

---

[1] A list of all GDC SOPs can be found at http://www.dcor.state.ga.us/content/facilities-division-0

Because Plaintiff alleges he appealed both his initial assignment by the Classification Committee and his Tier II assignment and he was not required to take any additional steps under SOP 209.06 or 209.08 after submitting the initial appeals, Plaintiff's allegations, taken as true, demonstrate proper exhaustion under the first step of the Turner test. As Defendants' motion to dismiss only relates to Plaintiff's initial placement in Administrative Segregation, Plaintiff's allegations and records concerning his assignment to Tier II segregation remain undisputed, leaving no factual dispute for the Court to resolve under the second step of the Turner test. Therefore, Defendants' motion to dismiss for failure to exhaust administrative remedies should be denied regarding Plaintiff's exhaustion of his Tier II placement.

As to Plaintiff's efforts to exhaust his remedies for his initial placement in Administrative Segregation, records produced by Defendants show the Classification Committee held a Tier I Program Hearing on July 9, 2020 for Plaintiff. (Doc. no. 20-2, p. 19.) On July 10, 2020, Warden White approved the Classification Committee's recommendation to detain Plaintiff in Tier I segregation. (Id.) On July 15, 2020, Warden White signed Plaintiff's assignment to Tier I segregation. (Id. at 20.) Defendants contend these two documents encompass Plaintiff's entire file regarding his initial placement in Administrative segregation, and Plaintiff never filed an appeal on the matter to exhaust his administrative remedies.

The Court finds Plaintiff's contention that he exhausted to be noncredible for the following reasons. First, several of Plaintiff's allegations are directly refuted by the sworn affidavit of deputy Warden Beasley and the paper records produced by Defendants. (Doc. no. 20-2.) Specifically, Plaintiff claimed Defendants deprived him of a Committee hearing for his initial placement in Tier Segregation, yet three committee members and Warden

7

White all signed off on a form indicating Plaintiff was given a hearing.  (Id. at 19.)  Second, as the Court noted in its December 16, 2020 Order, Plaintiff's complaint blatantly copied the Eleventh Circuit's retelling of facts in a separate and unrelated prisoner lawsuit, undermining the credibility of Plaintiff's complaint.  Compare Quintanilla v. Bryson, 730 F. App'x at 740-742, with doc. no. 1, pp. 5-10.  Thus, the Court finds Plaintiff never filed an appeal related to his initial placement in Administrative Segregation.

The exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules.  Johnson, 418 F.3d at 1159.  The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .  For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time.  If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court.  And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Johnson, 418 F.3d at 1159 (allowing an untimely grievance to satisfy exhaustion requirement would defeat aims of PLRA to review the merits of a prisoner's claim, does "not spur the corrective action that might have obviated the need for litigation, . . . filter  . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy").

8

Because the record confirms Plaintiff did not exhaust his administrative remedies, the portion of his due process claim relating to his initial placement in Administrative Segregation is subject to dismissal.  See Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**, (doc. no. 20), and Plaintiff's claims for denial of due process regarding his initial placement in Administrative Segregation be **DISMISSED** for failure to exhaust administrative remedies.

SO REPORTED and RECOMMENEDED this 21st day of July, 2021, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA